**UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

**FIDELITY NATIONAL PROPERTY
AND CASUALTY COMPANY, a write
your own carrier participating in the
National Flood Insurance Program,**

    **Plaintiff,**

v.                                            **Case No. 3:07cv278/MCR/EMT**

**BOARDWALK CONDOMINIUM
ASSOCIATION, INC., et al.,**

    **Defendants.**

**BOARDWALK CONDOMINIUM
ASSOCIATION, INC.,**

    **Third-Party Plaintiff,**

**v.**

**PEOPLES FIRST INSURANCE, INC.;
UNITED STATES LIABILITY INSURANCE
COMPANY; CONTINENTAL CASUALTY
COMPANY; GAMBRELL AND STURGES,
LLC; and PHIL GAMBRELL,**

    **Third-Party Defendants.**
_____/

## O R D E R

Fidelity National Property Casualty Insurance Company ("Fidelity"), a write your own carrier participating in the United States Government's National Flood Insurance Program, brought suit against Boardwalk Condominium Association ("Boardwalk") pursuant to the National Flood Insurance Act of 1968, as amended, 42 U.S.C. § 4001, *et seq*, to recover

alleged overpayments made to Boardwalk, totaling over $1,000,000.[1]  Boardwalk's non-profit association professional liability insurers, Continental Casualty Company ("Continental") and United States Liability Insurance Company ("USLIC"), both denied coverage to Boardwalk as well as Boardwalk's request for a defense.  Boardwalk then filed this third-party action against Continental and USLIC, seeking a declaration that at least one of the companies owes Boardwalk a duty to defend and insurance coverage for Fidelity's claims in the underlying lawsuit and also asserting claims of breach of contract. (Doc. 91.)  Boardwalk also asserts a claim of negligence against Gambrell and Sturges, LLC, an insurance agency, and Phil Gambrell, an individual insurance agent, alleging they negligently failed to provide the liability insurance carriers with timely notice of Fidelity's claims against Boardwalk.  The court stayed all proceedings in Fidelity's underlying lawsuit pending resolution of Boardwalk's third-party claims (doc. 70).

Now pending before the court are motions for summary judgment filed by Third-Party Defendant Continental (doc. 126); Third-Party Defendant USLIC (doc. 124); and Third-Party Defendants Gambrell and Sturges, LLC and Phil Gambrell (doc. 125).  Third-Party Plaintiff Boardwalk opposes all of the motions (doc. 139).[2]  The court has now fully considered the record and the parties' arguments.

**Background** [3]

Boardwalk owns property on Pensacola Beach, Florida, that suffered flood damage during two hurricanes – Ivan in 2004 and Dennis in 2005.  Boardwalk received flood insurance payments on multiple residential condominium building association standard flood insurance policies issued by Fidelity through the National Flood Insurance Program.

---

[1] Several individual condominium owners are also defendants in the underlying suit, but they are not involved in the third-party summary judgment motions currently pending before the court.

[2] Continental and USLIC also filed responses (docs.134, 137, 138).

[3] For the limited purposes of this summary judgment proceeding, the court views "the evidence and all reasonable inferences drawn from it in the light most favorable to the nonmoving party," *Martin v. Brevard County Pub. Sch.*, 543 F.3d 1261, 1256 (11th Cir. 2008) (internal marks omitted), bearing in mind that "what is considered to be the facts at the summary judgment stage may not turn out to be the actual facts if the case goes to trial," *Cottrell v. Caldwell*, 85 F.3d 1480, 1486 (11th Cir. 1996).

Subsequent to receiving the payments, Boardwalk received notice from Fidelity that during an audit of Boardwalk's claims, it was determined that the claims had been paid on the understanding that the buildings at issue were "pre-FIRM" buildings, meaning they were constructed prior to the community being issued a flood insurance rate map ("FIRM"), when in fact they were not. The buildings were confirmed to have been post-FIRM, meaning they were constructed after adoption of the community's flood insurance rate map, and thus, they were subject to payment limitations that were not taken into consideration at the time the claims were paid. Fidelity sent notice of the overpayment and reimbursement request to Boardwalk through several letters dated March 12, 2007.[4] The letters informed Boardwalk that, as a result of the incorrect building rating, it had received funds in excess of what it was entitled to receive under the National Flood Insurance Program, and Boardwalk was required to reimburse the excess federal funds paid on the claims, totaling over $1,000,000. Each letter stated, in part, as follows:

> During the review it was discovered that your 2004 claim was paid incorrectly. Your building was rated as a pre-firm elevated building. It was confirmed that the insured building is post-firm elevated with an enclosure. The elevated building limitations were not applied, and resulted in an overpayment of the 2004 claim.[5] . . . . As a result we must request reimbursement of the overpayment . . . . This payment must be received in our office within 15 days from the date of this letter. If we do not receive the overpayment we will have no choice but to take further action to make this recovery.

(Doc. 124-2.) Boardwalk received the letters on March 13, 2007, and Boardwalk's association manager, Diane Edwards, notified and delivered the letters to Boardwalk's insurance agent, Phil Gambrell. On March 26, Boardwalk's president, David Sundstrom, wrote a letter to Fidelity, disagreeing with the reimbursement request, stating, "Qualified Insurance Adjusters determined the extent of our damage and provided our insurance

---

[4] Boardwalk received a series of over 20 letters dated March 12, 2007, one for each claim or building for which it had received a flood insurance payment that was subsequently determined to have been in error. Each letter states the amount of reimbursement required for each corresponding building.

[5] Some of the letters referred to overpayments resulting from Boardwalk's 2005 claims. In all other respects, the letters were identical except as to the amount of reimbursement required for each building.

Case No. 3:07cv278/MCR/EMT

carrier with the information to pay our claim." (Doc. 139-3.) He stated Boardwalk had used the insurance payments "in good faith" to repair the property.

Fidelity did not receive reimbursement from Boardwalk; as a result, it filed the underlying lawsuit against Boardwalk on June 29, 2007, seeking declaratory relief as to the status of the buildings, the proper scope of flood insurance coverage, whether reimbursement is due of payments to which Boardwalk was not entitled, and whether the standard flood insurance policies are void from their inception due to a material misrepresentation of fact. Fidelity alleges in the complaint that Boardwalk made a misrepresentation in the application for coverage concerning the construction date of the property and status of the buildings as being pre-FIRM. Fidelity's complaint specifically alleges, in part:

> 15. Subsequent to the losses and claim payments, it was determined that Defendants' buildings are in fact [ ] post-FIRM, elevated buildings located in special flood hazard areas, and were subject to limitations that were not taken into consideration at the time of the claims based upon the representations that the buildings were in fact pre-FIRM buildings.
>
> 16. A misrepresentation was made in the application for coverage concerning the construction date of the property and the status of the buildings as being pre-FIRM, and the failure of the Defendants to rectify the misrepresentation prior to or at the time of the loss resulted in Defendants receiving more than $1,000,000 (one million dollars) in U.S. Treasury benefits that they would not have otherwise received.
>
> * * * *
>
> 19. Defendants knew or should have known that the buildings and property at issue were in fact post-FIRM, elevated buildings in special flood hazard areas, not pre-FIRM buildings.
>
> * * * *
>
> 21. Defendants . . . are in wrongful possession of more than one-million dollars in U.S. Treasury benefits.
>
> 22. Amicable demand was made upon Defendants by Plaintiff for return of the monies pending resolution of the question to no avail.

(Amended Complaint, Doc. 33.)

Boardwalk was served with the lawsuit on August 31, 2007, and sent notice the same day to its liability insurance carrier, USLIC, requesting liability coverage and a defense in the suit, pursuant to USLIC Policy No. CAP1010044.[6] USLIC denied both liability coverage and a defense by letter dated September 14, 2007, asserting that its policy provides coverage only for wrongful acts for which the claim is "first made" during the policy period, which was March 18, 2007, through March 18, 2008. USLIC stated that because Fidelity first made its claim for reimbursement through the letters dated March 12, 2007, and Boardwalk would have received the letters at least three days prior to the effective date of coverage, the claim was not first made during USLIC's policy period. Boardwalk then sent notice of the suit to Continental on or about September 25, 2007, seeking coverage and a defense pursuant to Continental Policy No. 0250821741, which was in effect from March 18, 2006, through March 18, 2007, and thus covered the time when Boardwalk received the letters. The Continental policy is also a "claims first made" policy. Continental denied liability coverage and a defense as well, stating that pursuant to the terms of its policy, the claim was first made when Fidelity filed suit in June 2007, subsequent to the expiration of coverage under Continental's policy.

Boardwalk filed this third-party action seeking a declaration that one of these companies owes it coverage for Fidelity's claims and is obligated to provide a defense in the underlying lawsuit. Boardwalk also alleges claims of breach of contract against Continental and USLIC, and a claim of negligence against Gambrell and Sturges, LLC, and Phil Gambrell, for their alleged failure to timely notify the USLIC or Continental of Fidelity's claims. The third-party defendants have each filed motions for summary judgment, which Boardwalk resists.

**Summary Judgment Standard**

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to

---

[6] Boardwalk submitted deposition testimony of Boardwalk's president David Sundstrom and insurance agent Phil Gambrell, who each testified that he regarded the service of the lawsuit on August 31, 2007, as the first notice that Boardwalk was accused of wrongful misconduct.

Case No. 3:07cv278/MCR/EMT

any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment is not appropriate "if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact." *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 594 (11th Cir.1995). "'[T]he mere existence of a scintilla of evidence'" supporting the nonmoving party's position will not be adequate to resist a properly supported summary judgment motion; "'there must be evidence on which the jury could reasonably find for the non-movant.'" *Burton v. City of Belle Glade*, 178 F.3d 1175, 1187 (11th Cir. 1999) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986), and other internal marks omitted).

**Discussion**

"The construction of insurance contracts is governed by substantive state law," *Provau v. State Farm Mut. Auto. Ins. Co.*, 772 F.2d 817, 819 (11th Cir. 1985), and there is no dispute that Florida law governs the insurance coverage and duty to defend issues in this third-party cause of action. Florida courts interpreting insurance policies are "guided by the 'plain meaning' of the language used in the policies." *Acosta, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 2010 WL 1709176, at *8 (Fla. 1st DCA Apr. 29, 2010) (quoting *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 532 (Fla. 2005)). Florida courts consider the policy "as a whole and give every provision its full meaning and effect." *State Farm Fire & Cas. Co. v. Steinberg*, 393 F.3d 1226, 1230 (11th Cir. 2004) (internal marks omitted). A provision that is clear and unambiguous "should be enforced according to its terms whether it is a basic policy provision or an exclusionary provision." *Taurus Holdings*, 913 So. 2d at 532 (internal marks omitted); *Acosta*, 2010 WL 1709176, at *8. If a provision is susceptible to more than one reasonable interpretation, the policy is

ambiguous and must be interpreted liberally in favor of the insured. *Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000).

The duty to defend is distinct and broader than the duty to indemnify. *Baron Oil Co. v. Nationwide Mut. Fire Ins. Co.*, 470 So. 2d 810, 814 (Fla. 1st DCA 1985), *cited with approval in Higgins v. State Farm Fire & Cas. Co.*, 894 So. 2d 5, 10 (Fla. 2004). Conversely, the duty to indemnify is narrower than the duty to defend, and therefore, there can be no duty to indemnify where there is no duty to defend. *WellCare of Fla., Inc. v. Am. Int'l Specialty Lines Ins. Co.*, 16 So. 3d 904, 906 (Fla. 2d DCA 2009). Where a lawsuit has been filed, the insurer's duty to defend is determined "solely by the claimant's complaint." *Higgins*, 894 So. 2d at 10 & n.2 (noting an exception exists in some cases, such as where the claim of no duty to defend is based on factual issues that would not normally be alleged in the underlying complaint, such as breach of an assistance and cooperation clause). To give rise to a duty to defend, the complaint must set forth "'facts that bring the case within the coverage of the policy [whereas] the duty to indemnify is determined by the facts adduced at trial or during discovery.'" *Acosta*, 2010 WL 1709176, at *9 (quoting *Farrer v. U.S. Fid. & Guar. Co.*, 809 So. 2d 85, 88 (Fla. 4th DCA 2002)). Even if the actual facts turn out to be inconsistent with the allegations in the underlying complaint, the allegations of the complaint are controlling in determining the duty to defend. *Baron Oil Co.*, 470 So. 2d at 814. "Under Florida law, if the allegations of the complaint leave any doubt as to the insurer's duty to defend, the question must be resolved in favor of the insured." *Penn-Am. Ins. Co. v. Lucky Entertainment, LLC*, No. 8:08cv2538, 2010 WL 1645133, at *4 (M.D. Fla. Apr. 22, 2010) (citing *Steinberg*, 393 F.3d at 1230). However, "[i]f the pleadings show the applicability of a policy exclusion, the insurer has no duty to defend." *Keen v. Fla. Sheriffs' Self-Insurance*, 962 So. 2d 1021, 1024 (Fla. 4th DCA 2007).

USLIC and Continental each issued Boardwalk a claims-made policy covering a different period of time and providing a duty to defend only for loss based on claims "first made" against the insured during the policy period. *See First Professionals Ins. Co. v. McKinney*, 973 So. 2d 510, 514-15 (Fla. 1st DCA 2007) (describing a "claims made" policy as meaning "coverage would be provided for any claims actually made during the policy

period"). As noted above, where suit has been filed, the court ordinarily looks only to the allegations of the underlying complaint to determine whether there is a duty to defend. *See Higgins*, 894 So. 2d at 10 & n.2. It is an "unremarkable proposition [however] that, in some cases, extrinsic evidence is necessary due to ambiguities in the pleadings." *Acosta,* 2010 WL 1709176, at *9. Consideration of evidence outside the complaint is proper where its "existence and authenticity [i]s undisputed," and the general summary judgment standard "allows a trial court to decide a case where the undisputed facts show that a party is entitled to judgment as a matter of law." *Id.* The underlying complaint alleges that Fidelity previously made a demand for payment, but it does not state when the demand was made or any details of the previous demand. (*See* doc. 33, at 32, stating "Amicable demand was made upon the Defendants by Plaintiff for return of the monies pending resolution of the question to no avail.") Thus, the complaint is sufficiently ambiguous to permit the court to consider the demand letters referenced indirectly in the complaint. The existence and authenticity of the letters is undisputed, and both USLIC and Continental seek summary judgment on the question of whether the claim was "first made" in the March 12, 2007 letters Fidelity sent to Boardwalk.

USLIC argues that it has no duty to defend or indemnify because Fidelity's claim was "first made" through the March 12, 2007 letters, which Boardwalk received prior to the effective date of its coverage. A "claim" is defined in the USLIC policy, in relevant part, as "any written notice received by any Insured that any person or entity intends to hold such Insured responsible for a Wrongful Act;" and the policy considers a claim to be "first made" when the insured receives notice of a claim.[7] (Doc. 124-1, at 8-9.) Furthermore, the policy defines a wrongful act as "any actual or alleged act, error, omission, misstatement, misleading statement, neglect, or breach of duties" by the insured organization. (Doc. 124-1, at 10.)

The court concludes that the letters, which Boardwalk received on March 13, 2007, provided notice to Boardwalk of a "claim" within the meaning of USLIC's policy because

---

[7] Throughout the relevant insurance policies quoted in this order, there are terms in bold print which are specially defined in the policy. The court has removed this emphasis in all quoted excerpts.

they constituted written notice, received by Boardwalk, that Fidelity intended to hold Boardwalk responsible for the improper rating of the buildings as "pre-FIRM" and the resulting overpayment. In the letters, Fidelity requested repayment of specific sums of money which it asserted were incorrectly paid. Fidelity further stated expressly in the letters that if it did not receive the overpayment from Boardwalk within 15 days, it would take further action to make the recovery. Fidelity's intent to hold Boardwalk responsible for the error is unmistakable. Boardwalk argues that the letters did not put it on notice that it was being charged with committing a "wrongful act" because the letters stated only that Boardwalk "was paid incorrectly," without accusing Boardwalk of wrongdoing, and the letters do not state who is responsible for incorrectly rating the buildings. The plain language of the policy, however, does not require an allegation of bad intent; "any actual or alleged act, error, omission, [or] misstatement" of the insured will suffice.[8] Regardless of whether Boardwalk relied on adjusters to rate its buildings or incorrectly determined the rating itself, Boardwalk itself submitted the claim to Fidelity, and Boardwalk received and spent the overpayment. And, Fidelity's letters provide clear notice that Fidelity intended to hold Boardwalk responsible for repayment. Boardwalk received the letters on March 13, 2007, and therefore, the claim was "first made" prior to the effective date of USLIC's policy coverage, which began on March 18, 2007. Consequently, USLIC owes no duty to defend or indemnify in this matter. Also, the breach of contract claim is necessarily moot in light of this conclusion. Thus, the court will grant summary judgment to USLIC on Count I and Count III.

Continental argues that under the terms of its "claims made" policy, the claim was not "first made" until Fidelity filed the lawsuit in June 2007, after the expiration of its policy coverage period. Continental's policy defines a claim, in relevant part, as either (1) "a civil . . . proceeding," or (2) "a written demand for monetary damages or non-monetary relief" against the insured "for a Wrongful Act." (Doc. 126-7, at 7 & 13.) A wrongful act is defined

---

[8] Additionally, because the policy includes an express exclusion for claims brought about by dishonest or fraudulent wrongful acts, it is clear that an "act or error" need not involve an allegation of bad intent to state a claim. An "errors and omissions policy is not designed to provide coverage to the insured for its own systematic, deliberate, wrongful conduct." *Wellcare*, 16 So. 3d at 906.

Case No. 3:07cv278/MCR/EMT

as "any actual or alleged error, misstatement, misleading statement, act or omission or neglect or breach of duty by the Entity." (Doc. 126-7, at 14). Although Boardwalk indisputably received the letters within Continental's policy coverage period, Continental argues that the letters did not allege a "wrongful act" within the meaning of the policy sufficient to create a duty to defend because the letters did not accuse Boardwalk of any wrongdoing. The plain language of the policy issued by Continental, however, defines "wrongful act" in the same manner as USLIC's policy; and as already noted, the March 2007 letters reasonably support a claim of an actual or alleged error, misstatement, act or omission in Boardwalk's flood insurance payment request, regardless of the lack of any accusation of fault or bad intent. It is apparent from the written letters that Fidelity holds Boardwalk responsible for the erroneous building rating error and overpayment which Fidelity requires it to repay and the letters fairly communicated that intent to Boardwalk. Continental also argues that the letters did not include allegations sufficient to put Boardwalk on notice of a potential lawsuit. Continental's policy language, however, does not require that the written demand formally indicate a lawsuit is contemplated in order to comprise a "claim" within the meaning of the policy. Under the policy language, a claim may be either notice of a civil proceeding or a "written demand for monetary damages or non-monetary relief." (Doc. 126-7, at 7, 13.) While the term "damages" implies that the money demanded must be legally recoverable in order to constitute a claim under the policy,[9] the policy language does not require that the demand contain notice of a lawsuit or notice of a particular legal cause of action in order to give rise to a "claim." The term damages, not specifically defined in the policy, is generally defined simply as "[m]oney claimed by, or ordered to be paid to, a person as compensation for loss or injury." Black's Law Dictionary (8th ed. 2004). Fidelity plainly demanded payment of specific amounts and indicated that it would take further action to make the recovery if payment was not forthcoming. The filing of a lawsuit is not a requirement, and not labeling the requested

---

[9] The policy provides that a loss under the policy means damages, settlements, or defense costs, but it does not include punitive damages, fines imposed by law, taxes, amounts for which there is no legal recourse against the insured, or matters that are uninsurable under the law. (Doc. 126-7, at 14.)

Case No. 3:07cv278/MCR/EMT

reimbursement as "damages" is of no consequence; even a written demand for non-monetary relief is a claim under the policy. Even if the letters are considered to be unclear, under Florida law, where the allegations "leave any doubt as to the insurer's duty to defend, the question must be resolved in favor of the insured." *Penn-Am. Ins. Co*, 2010 WL 1645133, at *4 (citing *Steinberg*, 393 F.3d at 1230). The court concludes that Fidelity's claim was "first made" in the March 12, 2007 letters, which were delivered to Boardwalk within the coverage period of Continental's policy.[10]

Continental does not otherwise assert that the complaint fails to "fairly and potentially bring the suit within the policy coverage," giving rise to a duty to defend. *Jones v. Fla. Ins. Guar. Assoc., Inc.*, 908 So. 2d 435, 442-43 (Fla. 2005). Instead, Continental argues only that Boardwalk's claim for indemnity is not yet ripe for adjudication. The court agrees. "'[T]he duty to indemnify is determined by the facts adduced at trial or during discovery.'" *Acosta*, 2010 WL 1709176, at *9 (quoting *Farrer*, 809 So. 2d at 88). Accordingly, the duty to indemnify is not ripe for adjudication in a declaratory judgment action until there is a factual determination that the inured is liable in the underlying suit. *Smithers Const., Inc. v. Bituminous Cas. Corp.*, 563 F. Supp. 2d 1345, 1348 (S.D. Fla. 2008) (applying Florida law). Thus, the court denies Continental's motion for summary judgment on Count I and Count II of the third-party complaint.

The court's preceding conclusions that USLIC owes no duty to defend or indemnify and that any delay in receiving notice was not prejudicial to Continental (*see* Note 10,

---

[10] The insured has the responsibility under Continental's policy to provide written notice of a claim to the insurer "as soon as practicable" after the claim is first made as a condition precedent to Continental's obligations under the policy. (Doc. 126-7, at 17.) However, "an insured's violation of a notice requirement does not relieve the insurer of its contractual obligation to defend when no prejudice is shown." *Bellsouth Tel., Inc. v. Church & Tower of Florida, Inc.*, 930 So. 2d 668, 671 (Fla. 3d DCA 2006). *See H.S. Equities, Inc. v. Hartford Acc. & Indem. Co.*, 334 So. 2d 573, 575 (Fla. 1976) ("Under Florida law late notice is not a defense if the insured can establish that the insurer was not prejudiced thereby."). Additionally, "the failure of the carrier to offer a proper defense upon receipt of notice waives any defect in delaying notice." *Nationwide Mut. Fire Ins. Co. v. Beville*, 825 So. 2d 999, 1004 (Fla. 4th DCA 2002). Continental does not argue Boardwalk failed to timely notify it of the claim, and even if it did, Continental's failure to demonstrate prejudice would preclude such a defense. Continental does not argue that it suffered prejudice attributable to the six-month delay between Boardwalk's receipt of the letters from Fidelity in March and Continental's receipt of notice of the claim in September, and its refusal to tender a defense when it received notice of the claim in September 2007 operates as a waiver of any defect due to delay. *See Beville*, 825 So. 2d at 1004 (noting the delay in giving notice had no affect on the duty to defend because the carrier refused to offer a proper defense).

Case No. 3:07cv278/MCR/EMT

*supra*) foreclose Boardwalk's negligence claims against Gambrell and Sturges, LLC and Phil Gambrell. Those claims only would exist factually if the court determined that the late notice to Continental barred coverage. Because Continental was not prejudiced by any alleged untimeliness of notice of the claim, the negligence claims fail as a matter of law. The court thus will grant summary judgment in favor of Gambrell and Sturges, LLC and Phil Gambrell on Count IV.

Accordingly, it is hereby ORDERED:

1. Third-Party Defendant United States Liability Insurance Company's motion for summary judgment (doc. 124) is GRANTED.

2. Third-Party Defendants Gambrell and Sturges, LLC and Phil Gambrell's motion for summary judgment (doc. 125) is GRANTED.

3. Third-Party Defendant Continental Casualty Company's motion for summary judgment (doc. 126) is DENIED, and the court declares that Continental owes Boardwalk a duty to defend in the underlying lawsuit. However, this denial is without prejudice to Continental raising coverage-related defenses, which are not yet ripe, after liability in the underlying lawsuit has been determined.

4. The stay entered by the court pending Boardwalk's third-party declaratory judgment action (doc. 70) is hereby lifted. The court will schedule a Rule 16 conference pursuant to a separate order.

**DONE AND ORDERED** this 12th day of May, 2010.

*s/ M. Casey Rodgers*
**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**